J-S09004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.A.J., A MINOR,<br><br>Appellee<br><br><br>APPEAL OF: V.B., MOTHER | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br>No. 2955 EDA 2016 |

Appeal from the Decree August 16, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000384-2016, CP-51-DP-0002785-2014,
FID: 51-FN-002549-2014

| | |
|---|---|
| IN THE INTEREST OF: A.A.F., JR., A MINOR,<br><br>Appellee<br><br><br>APPEAL OF: V.B., MOTHER | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br>No. 2956 EDA 2016 |

Appeal from the Decree August 16, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000385-2016, CP-51-DP-0002788-2014,
FID: 51-FN-002549-2014

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 29, 2017**

V.B. ("Mother") appeals from the decrees granting the petitions filed

by the Philadelphia Department of Human Services ("DHS") to involuntarily

terminate her parental rights to her sons, J.A.J., born in July of 2006, and

A.A.F., Jr., born in July of 2013, (collectively, "Children"), pursuant to

sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.

§§ 2101-2938.  After careful review, we affirm.[1]

The trial court has set forth the relevant factual and procedural history

of this case, as follows:

> The family in this case became involved with DHS on August 25,
> 2014, when DHS received a General Protective Services ("GPS")
> report that [Mother] had been assaulted in front of the Children,
> that their home lacked electricity and that Mother used cocaine
> in the presence of the Children.  Further GPS reports alleged that
> Mother left the Children alone in the house, and that Mother was
> working as a prostitute. On October 28, 2014, DHS visited the
> home, which was filthy and full of cockroaches.  The Children did
> not have beds or food. DHS began plans to implement services
> for [Mother] in the home.  On November 6, 2014, DHS again
> visited the home. [Mother] refused to allow DHS inside, and
> refused to sign or agree to a Safety Plan that DHS had
> developed.  DHS subsequently learned that [Mother was] about
> to be evicted from their home, and on December 1, 2014, DHS
> obtained an Order of Protective Custody for the Children,
> removed the Children and placed them in foster care.  On
> December 10, 2014, the Children were adjudicated dependent
> and fully committed to DHS custody.  The case was then
> transferred to a Community Umbrella Agency ("CUA") which

_____

[1]  The trial court also entered a decree terminating the parental rights of S.F.
("Father") to A.A.F., Jr.  Father's appeal, docketed at 2903 EDA 2016, is
addressed in a separate memorandum.

- 2 -

developed a Single Case Plan ("SCP") for [Mother]. Over the course of 2015 and 2016, [Mother] failed to successfully complete [her] SCP objectives or follow court orders, and [was] never rated fully compliant at regular permanency review hearings. On April 27, 2016, DHS filed petitions to terminate [Mother's] parental rights.

The goal change and termination trial was held on August 16, 2016. At the trial, the CUA social worker testified that Mother's SCP objectives had been the same for the entire life of the case. Mother's objectives were to attend the Clinical Evaluation Unit ("CEU") for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at the Achieving Reunification Center ("ARC"). Mother did not complete parenting classes and does not have employment. She did not successfully complete services at ARC, and does not have appropriate housing. Mother was invited to the Children's medical appointments, but did not attend. Mother only began attending mental health treatment after the petitions were filed on April 27, 2016. Mother has not obtained an assessment from CEU, has not taken any random drug screens and has been engaged in drug treatment for only ten weeks. Mother's own exhibit shows that Mother's creatinine levels on two occasions were low and close to dilution. During her drug and alcohol treatment, Mother has been 'washing' her urine of illegal substances. (Mother's Exhibit 1). Mother has had these objectives explained to her a number of times. She has consistently attended supervised visits in the last three months, but for the first fourteen months of the case, Mother missed nearly half her visits. Reunification with Mother is not appropriate at this time. Mother never signed the required consents. . . . [A.A.F., Jr.] is bonded with his foster parents, and would suffer no irreparable harm if [Mother's] parental rights were terminated. It is in [A.A.F., Jr.'s] best interest to be adopted. While Mother has a positive relationship with [A.A.F., Jr.], [A.A.F., Jr.] does not reciprocate. [J.A.J.] has a positive relationship with his foster parents, who care for his medical and emotional needs. [J.A.J.] suffers no effects when [Mother] miss[es] visits. The CUA social worker testified that [J.A.J.] would be persistently sad if Mother's rights were terminated, even if he attended therapy. However, [J.A.J.] is also sad when Mother misses visits. Their relationship

is unhealthy, leaving [J.A.J.] in limbo without permanency. [A.A.F., Jr.] and [J.A.J.] visit each other regularly, and their foster parents interact well.

Mother testified that, for the last three months, she had been attending a program covering drug and alcohol treatment, parenting and other life skills. Mother provided a parenting certificate and drug screens from this program. The screens were all negative. Mother testified that during visits she regularly checks [A.A.F., Jr.'s] body for bruises. Mother testified that her drug of choice had been heroin and cocaine, but she was currently on methadone as treatment. Her drug screens all showed positives for methadone. . . . The court found that DHS made reasonable efforts to reunify [Children] with [Mother]. Following argument, the court terminated Mother's parental rights to the Children . . . and changed the Children's goal to adoption. [Mother] subsequently filed [an appeal].

Trial Court Opinion, 11/14/16, at 1–4 (record references and footnote omitted).

Mother raises the following issues for appellate review:

1. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. §2511(a)(1)?

2. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. §2511(a)(2)?

3. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. §2511(a)(5)?

4. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. §2511(a)(8)?

5. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. §2511(b)?

Mother's Brief at 5–6.[2]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id***.; ***R.I.S.***, 36 A.3d [567, 572 (Pa. 2011) (plurality)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id***.; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, ___ Pa. ___, 34 A.3d 1, 51 (2011); ***Christianson v. Ely***, 575 Pa. 647, 654, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id***.

***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J. & G.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

---

[2] We note with disapproval that Mother's "Statement of Question Involved" portion of her brief does not comport with Pa.R.A.P. 2116 ("The statement of the question involved must state concisely the issue to be resolved, expressed in terms and circumstances of the case. . . ."). However, because Mother's briefing deficiency does not impede meaningful appellate review, we shall not quash her appeal for failure to comply with Rule 2116.

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The termination of parental rights involves a bifurcated analysis, governed by Section 2511 of the Adoption Act.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the matter *sub judice*, the trial court terminated Mother's parental rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); ***see also In the Interest of M.T.***, 101 A.3d 1163, 1179 (Pa. Super. 2014) (*en banc*) (this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a)). In this case, we conclude that the certified record supports the decrees pursuant to section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

The trial court offered the following rationale for terminating Mother's

parental rights under section 2511(a)(1):

The petitions for involuntary termination were filed on April 27, 2016. Mother's SCP objectives were to attend CEU for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at ARC.  In the six months prior to the filing of the petition, Mother did not complete parenting classes or obtain employment.  She did not successfully complete services at ARC, and does not have appropriate housing. Mother did not attend any of the Children's medical appointments, though she was invited. Mother did not begin mental health treatment during the six-month period.

Mother never attended CEU, never obtained an assessment and did not engage in drug and alcohol treatment during the six-month period. Mother missed half of her supervised visits during the six-month period. Mother never signed the required consents. Looking beyond the six–month period, Mother's objectives have been the same for the life of this case, and have been explained to her a number of times. It was only after the petitions were filed that Mother started working on some of her objectives at My Sister's Place.[3] Mother still has not successfully complete[d] any objectives and is in no position to take custody of the Children. Mother evidenced a settled purpose of relinquishing her parental claim since she has failed to perform parental duties. As a result the trial court did not abuse its discretion by finding clear and convincing evidence that Mother, by her conduct, had refused and failed to perform parental duties, so termination under this section was proper.

Trial Court Opinion, 11/14/16, at 5–6 (record references omitted).

On appeal, Mother contends that her participation in programs offered at My Sister's Place, *i.e.*, drug testing, attendance at Alcoholics Anonymous and Narcotics Anonymous meetings, and parenting classes, indicate that she is progressing with her objectives. Thus, argues Mother, DHS has failed to present clear and convincing evidence that she has evidenced a settled purpose to relinquish her parental rights and has failed to perform parental duties.

Mother's claim is unavailing. Under the clear terms of the Adoption Act, "with respect to any petition filed pursuant to subsection (a)(1) . . ., the

_____

[3] Although there was no direct evidence offered at the termination hearing outlining the mission of My Sister's Place, it can be deduced from the testimony that My Sister's Place is a residential facility in Philadelphia offering mental health therapy and addiction counseling.

court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). Mother entered My Sister's Place sometime in May 2016, after the termination petitions were filed on April 27, 2016. Therefore, it would have been improper for the court to consider any ameliorative conduct by Mother after that date supposedly probative of performance of her parental duties. Accordingly, after careful review, we conclude that the trial court's findings of fact are supported by the certified record and that there was no abuse of discretion or error of law in the trial court's decision to terminate Mother's parental rights under section 2511(a)(1).

Mother also argues that the petitioner failed to satisfy its burden of proof under 23 Pa.C.S. § 2511(b). As previously noted, the focus in terminating parental rights under section 2511(b) is on the child. *Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention"

- 9 -

> should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Furthermore, the trial court may emphasize the safety needs of the child. ***In re B.C.***, 36 A.3d 601, 611 (Pa. Super. 2012) (citing ***In re K.Z.S.***, 946 A.2d 753, 763–764 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years)).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

The trial court found the following regarding termination under section 2511(b), based upon the testimony of Stephanie Riley, the Community Umbrella Agency ("CUA") caseworker:

> Mother has missed nearly half her visits over the life of this case. [J.A.J.] interacts well with Mother during visits, and is sad when she does not attend. However, Mother's inconsistent attendance has caused [J.A.J.] to be sad and worried more than is normal for a child of his age. Mother's inconsistency is not healthy for [J.A.J.'s] mental and emotional wellbeing. Mother's relationship with [J.A.J.] is not a beneficial one, but one which places emotional strains upon [J.A.J.]. [J.A.J.] would not suffer

irreparable harm if Mother's rights were terminated. [J.A.J.] is placed with foster parents who care for his needs, and it would be in his best interest to be adopted. While Mother has a positive relationship with [A.A.F., Jr.], [A.A.F., Jr.] does not reciprocate. [A.A.F., Jr.] is bonded with his foster parents, and would suffer no irreparable harm if Mother's parental rights were terminated. It is in [A.A.F., Jr.'s] best interest to be adopted. [J.A.J.] and [A.A.F., Jr.] visit each other regularly, and their foster parents interact well. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive parental bond, and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

Trial Court Opinion, 11/14/16, at 13–14 (record references omitted).

Mother's sole challenge to the trial court's section 2511(b) termination decision is the fact that Ms. Riley testified that J.A.J. "would be sad if his parent's rights were terminated, he has a healthy relationship with [Mother], and worries about her well-being." Mother's Brief at 17.[4] However, Ms. Riley also testified that J.A.J.'s persistent sadness could potentially be abated by therapy and that his concern for Mother surpassed what might be considered normal for someone of J.A.J.'s age. N.T., 8/16/16, at 55. Ms. Riley additionally observed that J.A.J.'s positive perception of Mother was at odds with Mother's actual parenting efforts. *Id.*

J.A.J.'s healthy relationship with his Mother and his expressed sadness if the relationship was terminated is not sufficient to override DHS's evidence that termination of Mother's parental rights best serves J.A.J.'s needs and

_____

[4] Mother does not allege error in the trial court's 23 Pa.C.S. § 2511(b) analysis regarding A.A.F., Jr.

welfare. "The mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011 (citation omitted). Rather, the court "must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* The trial court herein observed that Mother missed half of her opportunities to visit with J.A.J. and that her lack of consistency caused J.A.J. to experience worry in a manner disproportionate to his age. In other words, although there was a bond between Mother and J.A.J., it was not a bond beneficial to J.A.J. The trial court also noted that J.A.J.'s needs are currently met by his foster parents.

In considering the affection a child may have for his natural parents, this Court has explained as follows:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Therefore, while J.A.J.'s sadness is lamentable, it is not dipositive of the question of whether the bond between

Mother and J.A.J. is of the sort that benefits the child. The clear and convincing evidence demonstrated that the bond between J.A.J. and Mother was detrimental to J.A.J.'s emotional well-being.

After careful review, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *Adoption of S.P.*, 47 A.3d at 826–827. Accordingly, it was proper for the trial court to find that no bond exists such that the Children would suffer permanent emotional harm if Mother's parental rights were terminated. This Court finds no abuse of discretion in the trial court's termination of Mother's parental rights to the Children pursuant to section 2511(b). Therefore, we affirm the decrees terminating Mother's parental rights with regard to the Children under 23 Pa.C.S. § 2511(a)(1) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017

- 13 -